UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR HUGO ABURTO,<br><br>Petitioner,<br><br>v.<br><br>SHAWN HATTON, WARDEN<br><br>Respondent. | Case No. EDCV 06-00640 JLS (AFM)<br><br>**ORDER ACCEPTING IN PART AND REJECTING IN PART FINAL REPORT AND RECOMMENDATION (Doc. 72)**<br><br>**ORDER GRANTING ISSUANCE OF CERTIFICATE OF APPEALABILITY** |

This action arises out of a § 2254 Petition for Writ of Habeas Corpus filed by a Petitioner in state custody. The matter is before the Court on Remand from the Ninth Circuit. (Doc. 36.) The appeal was of the Judgment entered after the adoption of the August 9, 2010 Report & Recommendation ("2010 R&R"). (*See* Docs. 17, & 21-24.)

Currently before the Court is the Magistrate Judge's March 8, 2017 Final Report and Recommendation ("Final R&R"), which recommends that the Court grant a conditional writ of habeas corpus. Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, records on file, and the Final Report and Recommendation of United States Magistrate Judge. Further, the Court has engaged in a *de novo* review of those portions of the Final Report to which objections have been made. As set forth herein, the Court rejects in part and accepts in part the findings and recommendations of the Magistrate Judge.

## I. BACKGROUND

On October 29, 2002, Petitioner was convicted of fifty-seven counts of various crimes involving the sexual abuse of his former foster daughter, who was fifteen years old at the time the abuse began. (2010 R&R, Doc. 17 at 2.) Of these crimes, nine counts were crimes involving force, and the remaining forty-eight counts were for non-forcible sex crimes.[1] (*Id.*) On December 9, 2002, Petitioner was sentenced to fifty-seven years imprisonment, which consisted of six years for each forcible count, to be served consecutively, for a total of fifty-four years, and an additional three years for each of the non-forcible counts, to be served concurrently to each other, but consecutively to the time on the forcible counts. (*Id.*; CT 460-64.)

However, as the record eventually revealed, and as the parties have now acknowledged in the Joint Statement Regarding Further Proceedings ("Joint Statement"), all forty-nine of the non-forcible counts were untimely when brought. (*See* Jt. Stmt., Doc. 55 at 1.) The parties agree defense counsel's failure to object to the non-forcible counts constituted deficient performance within the meaning of *Strickland v. Washington*, 466 U.S. 668, 686 (1984), resulting in prejudice; thus, Petitioner was denied the effective assistance of counsel in violation of the Sixth Amendment. (*Id.* at 1-2.) More specifically, on May 18, 2015, the parties stipulated that the present Petition seeks review of a state court decision that "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," and that Petitioner is entitled to habeas relief to remedy the additional three-year term of incarceration imposed upon Petitioner at his sentencing as a result of the conviction on the untimely, non-forcible counts. (*Id.* (quoting 28 U.S.C. § 2254(d)(1).) The parties disagree regarding what additional remedy is required, if any. (*Id.* at 2.) Petitioner argues that his convictions should be

---

[1] At various points in the record, the number of non-forcible counts is noted as forty-nine or fifty. Forty-nine (not fifty) non-forcible counts were tried, but one of those counts (Count 34) was dismissed in the interests of justice due to an error in the verdict form. (*See* 2010 R&R at 2; CT 202-06; RT 658-659.)

2

vacated and he should be returned to the plea bargaining stage or, alternatively, that he is entitled to a new trial. (*Id.*) Respondent contends that resentencing on the forcible counts will cure all prejudice. (*Id.*)

This dispute may be framed as a disagreement as to the proper remedy, or it may be framed in terms of the scope of the *Strickland*-type prejudice suffered by Petitioner as a result of counsel's concededly deficient performance. The resulting inquiry is essentially the same, because the scope of the prejudice determines the appropriateness of the remedy, and the parties' disagreement as to the appropriate remedy arises from their disagreement as to the full extent of the prejudice.

The Final R&R recommends granting a conditional writ of habeas corpus and ordering that, if Petitioner is not brought to retrial within one hundred twenty (120) days, he be discharged from all adverse consequences of his conviction. (Final R&R at 16-17.) In arriving at that recommendation, the Magistrate Judge rejected Petitioner's contention that he should be returned to the plea bargaining stage,[2] and the Magistrate Judge also rejected Respondent's arguments that the matter be remanded for evidentiary hearing and/or that resentencing is the only remedy required. (*Id.* at 10-12.)

## II. LEGAL STANDARD

In recommending that the Court conditionally grant the petition and order a new trial for Petitioner, the Magistrate Judge relied heavily on the spillover effect doctrine, which relates to a denial of due process rather than ineffective assistance of counsel. Briefly, the spillover effect doctrine provides that where a defendant is charged with multiple crimes, and where he moves unsuccessfully to sever one or more of those counts, he may later challenge the court's denial of his motion to sever on habeas review if the joinder resulted in an unfair trial. *See Sandoval v. Calderon*, 241 F.3d

---
[2] The Court accepts and adopts this portion of the Final R&R. The indictment was amended to add the untimely charges on the eve of trial, and therefore counsel's performance was not deficient prior to that time, during the plea bargaining stage. (*See* Final R&R at 10-12.)

765, 771-72 (9th Cir. 2000). In such a case, prejudice in the form of a violation of the Due Process Clause is shown where an "impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 772 (citation omitted). The spillover effect doctrine has some analogous application to this case because both it and the *Strickland* standard examine whether the challenged action likely affected the jury verdict.

However, the Court's analysis must focus on the standard governing the Sixth Amendment right to the effective assistance of counsel at trial. *See Strickland*, 466 U.S. at 686. To establish ineffective assistance by his trial counsel, a petitioner must demonstrate both that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. *Id.* at 688-93. Here, the parties have stipulated to the first *Strickland* prong, and they have stipulated as to the prejudice resulting from Petitioner's conviction on the time-barred counts. They disagree whether Petitioner has shown prejudice as a result of the joinder of the time-barred offenses with the timely offenses.

To show prejudice, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Stated another way, "*Strickland* asks whether it is 'reasonably likely' the result would have been different." *Id.* at 111. "Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

Where *Strickland*-type prejudice is found, the Court fashions a remedy that "'neutralize[s] the taint' of [the] constitutional violation, . . . while at the same time [does] not grant a windfall to the defendant or needlessly squander the considerable

resources the State properly invested in the criminal prosecution." *Lafler v. Cooper*, 566 U.S. 156, 170 (2012) (citation omitted).

## III. DISCUSSION

### A. Evidence Regarding the Non-Forcible Counts Would Have Been Admissible Even if the Non-Forcible Counts Were Not Joined

Petitioner claims prejudice in the form of the admission of evidence regarding the untimely, non-forcible counts. (*See* Pet'r. Mem. P&A, Doc. 59 at 30-35.) However, evidence of this nature would have been admitted even if the non-forcible counts had not been joined.

In California prosecutions for sexual offenses, propensity evidence (in the form of evidence of prior sexual offenses) is generally admissible as an exception to the more general rule that excludes character evidence. Cal. Evid. Code §§ 1101, 1108. Admission of such evidence is subject to a balancing test that weighs probative value against the danger of undue prejudice. Cal. Evid. Code § 352. Before admitting such evidence, courts engage in a "careful weighing process" that considers the prejudicial impact on the jury, and other factors such as the "nature [and] relevance" of the evidence, the likelihood of whether the other offense occurred, "its similarity to the charged offense," and any "less prejudicial alternatives to . . . admission" of the evidence. *People v. Falsetta*, 21 Cal. 4th 903, 916-17 (1999). The constitutionality of the admission of this type of propensity evidence has been upheld by California courts and, under analogous federal evidentiary rules, by the Ninth Circuit. *See, e.g., People v. Cabrera*, 152 Cal. App. 4th 695, 704 (2007); *United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001).

Here, under California law, the evidence regarding the non-forcible counts would have been admissible even in the absence of charges on the non-forcible counts. *See People v. Villatoro*, 54 Cal. 4th 1152, 1160 (2012) (noting that prior, uncharged sexual offenses are admissible when the accused is on trial for sexual

5

offenses). Such evidence is admissible to show a defendant's propensity to commit sexual offenses, and "is especially probative and should be considered by the trier of fact when determining the credibility of a victim's testimony." *Id.* at 1164 (citation omitted). Evidence regarding Petitioner's sexual victimization of Jane Doe in a non-forcible manner on numerous occasions while she was placed in his home as a foster child would fall into the § 1108 exception to the general rule precluding the admission of character evidence.

### B. Under the Balancing Test, Most or All of the Evidence on the Non-Forcible Counts Would Have Been Admitted

The conclusion that the evidence would have been admissible under § 1108 leads to the question of whether application of the balancing test of § 352 would have resulted in exclusion of the evidence. The Court concludes that it would not have, and that most, if not all, of the evidence regarding the non-forcible counts would have been admitted because it gave context to the abusive foster-parent/child relationship, and it corroborated the testimony of Jane Doe; additionally, it explained the time gaps between the forcible sexual crimes, and it explained Jane Doe's delay in reporting the crimes.

Here, the jury heard Petitioner testify that he did not engage in any sexual activity with Jane Doe.[3] (RT 479-80.) They also heard from Petitioner's wife, Karen Aburto, who testified that there was sexual activity between Petitioner and Jane Doe, that she was aware of instances in which Petitioner would take Jane Doe alone with him into a bedroom for a period of time, that she witnessed the two of them engaging in sexual activity, and that she also participated in some of this activity with them.[4]

---

[3] At sentencing, Petitioner recanted that testimony in part. He acknowledged that he engaged in non-forcible sexual activity with Jane Doe, by stating that he "ha[d] a sexual relationship with [Jane Doe,]" but that he "never did rape her." (RT 682.)

[4] Mrs. Aburto's testimony at trial was consistent with her original statements to police investigators. (*Compare* RT 229-88 (trial testimony on Oct. 22, 2002) *with* CT 148-90 (transcript of police interview with Karen Aburto on Mar. 28, 2001).) In between the time of her initial statements before Petitioner's arrest and the trial, Mrs. Aburto wrote a letter to the judge presiding over Petitioner's case. (*See* RT 192.) In the letter, Mrs. Aburto denied that she or Petitioner engaged in any sexual activity with Jane Doe. (*Id.*) The jury heard evidence regarding this change to Mrs.

(RT 241-43.) Mrs. Aburto also testified that she believed, based on her observation, that Jane Doe was a willing participant in the sexual activity and was not subjected to force. (RT 281.)

Conversely, Jane Doe testified that Petitioner subjected her to both forcible sexual acts and non-forcible sexual acts. She testified regarding two date-specific instances of rape, one on December 17, 1997 (exactly one month after her fifteenth birthday) and the next on December 19, 1997 (two days later); she also testified more generally of being raped an additional ten to twenty times in the month that followed before she stopped physically resisting Petitioner in January 1998. (RT at 103-13, 119.) She also testified regarding forcible oral copulation and sodomy in April 1998 and June 1998, respectively. (RT 113-18 & 126-27.) Finally, Jane Doe testified that the non-forcible sexual acts were a more-or-less daily occurrence during her placement in Petitioner's home. (RT at 119 (victim's testimony).)

On this record, it is unlikely that the evidence regarding the non-forcible counts would have been excluded, as it is highly probative on a key issue, namely, sexual activity between Petitioner and Jane Doe. When compared to evidence of forcible sexual acts, evidence of non-forcible sexual acts are less inflammatory, and therefore less prejudicial. Thus, while evidence of a defendant's daily sexual abuse of a minor is prejudicial, even inflammatory, such evidence is not unduly prejudicial or unfairly prejudicial under the circumstances of this case.

Evidence of the continued non-forcible sexual abuse is also probative as to why Jane Doe did not report Petitioner's use of force sooner: she acquiesced to a continuing pattern of Petitioner's sexual abuse of her while she was placed in his home. This is consistent with Jane Doe's testimony that she reported the abuse to her aunt about five months after she moved out of Petitioner's home and into her aunt's home. (RT 139-41.)

---

Aburto's account of the relevant events. (RT 273-82.) Mrs. Aburto also testified that she denied any sexual activity when speaking with defense counsel's investigator and a therapist to whom she had been referred. (RT 275-76 & 87.)

7

Nor is it likely in this case that the evidence regarding the non-forcible sexual abuse could have been limited in some fashion. Here, the evidence of the non-forcible acts consisted of Jane Doe's testimony and Mrs. Aburto's testimony, and each testified in a general manner regarding the non-forcible acts. Jane Doe testified that the abuse continued on a daily basis for over a year and a half, and Mrs. Aburto testified she witnessed non-forcible sexual activity between Petitioner and Jane Doe on a number of occasions. In a trial on the forcible counts only, the probative value of this testimony as given is high, and would likely have been admitted without any changes.

On balance, the Court concludes that the evidence regarding Petitioner's non-forcible sexual abuse of Jane Doe would not have been excluded because the weight of the probative value regarding Petitioner's willingness to engage in sexual activity with a minor placed in his home as a foster child is not substantially outweighed by a danger of undue prejudice of this evidence. As a result, the evidence considered by the jury would likely have been the same even in the absence of the joinder of the non-forcible counts, and no *Strickland*-type prejudice resulted from that joinder.

### C. The State of the Evidence as to Forcible Counts Does Not Warrant a Retrial

In the Final R&R, the Magistrate Judge concludes that "the strength of the government's case on the remaining nine counts of forcible offenses reflects that the government's case was not sufficiently strong to overcome the spillover effect" of the evidence admitted as to the non-forcible counts. (Final R&R at 8.) For reasons already discussed, including likely admission of the same evidence even absent joinder of the non-forcible counts, the Court need not compartmentalize the evidence on the forcible and non-forcible counts; under California law, the latter is deemed relevant proof of the former. Rather, the question is whether, in addition to propensity evidence, the evidence on the forcible counts was sufficiently strong to negate a finding of prejudice. In other words, under *Strickland*, the strength of the

8

prosecution's case factors into the determination of prejudice. *See Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."); *Riley v. Payne*, 352 F.3d 1313, 1321 n.8 (9th Cir. 2003) ("[O]ur evaluation of *Strickland* prejudice must be considered in light of the strength of the government's case.")

Here, the trial judge's rationale for denying a motion for new trial is helpful as to a determination of whether Petitioner was prejudiced. (*See* RT 673-76.) Weighing the evidence as a "thirteenth juror" to determine its sufficiency, the trial judge recognized that the crucial question in this case was the believability of the testimony of Jane Doe, Petitioner, and Mrs. Aburto. (RT 673-74.) The judge found Jane Doe's testimony regarding Petitioner's use of force credible, and he found particularly credible her testimony regarding the first rape on December 17, 1997, including her testimony regarding a torn nightgown, which Jane Doe kept and which was admitted as evidence at trial. (RT 291-95, 524 & 673-76.) The judge took note of Jane Doe's testimony of the forcible sodomy count, where she testified that Petitioner stopped penetrating her anus with his penis when she told him that it hurt. (RT 674-75.) The judge noted that if Jane Doe had been motivated by ill intent toward Petitioner, she could have embellished her testimony regarding this incident rather than testifying as she did. (RT 674-75.) The judge also found credible Mrs. Aburto's testimony[5] regarding the lack of use of force, but he noted that her testimony on this issue could be reconciled with Jane Doe's testimony based on timing. (RT 674-76.) Specifically, Mrs. Aburto first became involved in the sexual abuse only after Jane Doe stopped physically resisting Petitioner's attempts at vaginal intercourse in January 1998.[6] (RT

---

[5] Although not expressly stated, it is apparent that the judge did not credit Mrs. Aburto's 2001 denial of any sexual activity and instead believed her trial testimony. *See supra* n.4.
[6] Although not expressly addressed by the trial judge, as to the counts of forcible oral copulation and sodomy, which occurred later in 1998, Mrs. Aburto's testimony is reconcilable with Jane Doe's testimony because Mrs. Aburto was not present for all the sexual activity between Jane Doe and Petitioner. (*See* RT 125 & 241-43.)

9

675.)

These remarks further establish that Petitioner was not prejudiced by the joinder of the non-forcible counts. The case against Petitioner as to the use of force was strong, and that strength was derived from Jane Doe's credibility. Jane Doe was not likely to be less credible on this issue had Petitioner been charged only with the forcible counts. Additionally, as discussed above, the evidence regarding the non-forcible counts was cross-admissible in the sense that it was highly likely to be admitted in a trial on only the forcible counts. Moreover, the forcible crimes are "simple and distinct" from the non-forcible crimes, and the distinctions were highlighted for the jury. Finally, the judge's discussion reveals that the evidence regarding the use of force was easily compartmentalized from evidence regarding the non-forcible crimes. Together, these factors are a further indication that Petitioner suffered no prejudice by the joinder of the non-forcible counts.

### D. Jury Instructions

The Final R&R discusses how joining the non-forcible counts in the trial deprived Petitioner of the opportunity to request a limiting instruction regarding the use of propensity evidence. (*See* Final R&R at 15 (citing *Falsetta*, 21 Cal.4th at 924).) Where a jury is advised that they may consider evidence of other sexual offenses to infer that a defendant had a predisposition to commit such offenses, the jury is also instructed on the limited manner in which they may view such evidence. *See Falsetta*, 21 Cal.4th at 923; CALJIC No. 2.50.01. Thereafter, the jury is instructed that if they infer such a predisposition, they may consider it as evidence that the defendant was likely to commit the charged offense, but that propensity evidence is not sufficient by itself to support a guilty verdict, and that the prosecution must still meet its burden of proof beyond reasonable doubt as to a defendant's guilt as the charged offense. *Falsetta*, 21 Cal.4th at 923.

This is a correct observation, as far as it goes. Certainly, Petitioner did not have the occasion to seek such a limiting instruction regarding propensity evidence.

However, as this trial proceeded, the evidence was admitted not as propensity evidence but as substantive evidence to support the additional non-forcible counts. The court properly instructed the jury to consider the evidence regarding each count separately. (CT 255.) Specifically, the court instructed the jury with CALJIC 17.02, which at the time provided: [7] "Each Count charge[s] a distinct crime. You must decide each Count separately. The defendant may be found guilty or not guilty of [any or all] of the crimes charged. Your finding as to each Count must be stated in a separate verdict." The completed verdict form in the record has fifty-eight separate pages, each dated October 29, 2002, finding Petitioner guilty on fifty-eight counts.[8] (CT 292-349.) The jury was polled regarding the verdict as to each of the fifty-nine counts.[9] (RT 650-64.)

Thus, despite the fact that Petitioner did not have the occasion to request a limiting instruction, the jury instructions given were sufficient to guard against prejudice as a result of the joinder of the non-forcible counts. The instructions, read as a whole, properly instructed the jury as to how to consider the evidence, and those instructions specifically directed the jury that to consider the evidence separately as to each count. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991) ("It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record.") (citation omitted). The law presumes that the jury understood and followed these instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."); *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985) ("The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to

---

[7] The current instruction is not substantially different than the earlier version.
[8] More specifically, it appears the jury was given a verdict form with two separate pages for each count: one with a "guilty" finding and one with a "not guilty" finding. The record also contains the "not guilty" pages for all counts, but these pages are not dated; they are blank except for a handwritten, upward slash "/" through the caption and text of each of these pages. (CT 350-408.)
[9] One count was dismissed due to an error in the verdict form. *See supra* n.1.

understand, make sense of, and follow the instructions given them."). In this particular context, "[i]n making the determination whether the specified errors resulted in the required prejudice, [the Court] presume[s] . . . that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694. Moreover, because the pagination of the verdict form required the jury to focus on a "guilty" or "not guilty" finding as to each count, the need to differentiate among the numerous counts was reemphasized to the jury when the verdict form was being completed by them.

*Strickland*-type prejudice is not easily established. *See Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) ("Surmounting *Strickland*'s high bar is never an easy task."); *Kimmelman*, 477 U.S. at 382 ("As is obvious, *Strickland*'s standard . . . is highly demanding."). On this record, Petitioner has not shown prejudice resulting from admission of the evidence regarding the untimely, non-forcible counts.[10] Neither has he shown prejudice based on the related issue of the lack of opportunity to seek a limiting instruction.[11] As discussed above, Petitioner has not shown a "reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different." *Id.* Notwithstanding the acknowledged deficient performance of defense counsel at trial in failing to address the untimeliness of the non-forcible counts, Petitioner has not shown that he was denied a fair trial; therefore, the Constitution does not require that he be granted a new trial. *See Kimmelman*, 477 U.S. at 382. Instead, to address the prejudice suffered as a result of the conviction on

---

[10] Petitioner argues that had the non-forcible counts not been joined, he might have adopted a different strategy regarding his testimony. Specifically, rather than testifying that he did not ever sexually abuse Jane Doe, Petitioner would have chosen to either refrain from testifying or to testify that he did not ever use force. (*See* Doc. 71, Pet'r Resp. to Obj. at 7-11.) Petitioner relies on *Johnson v. Baldwin* for this argument. 114 F.3d 835 (9th Cir. 1997). In *Johnson*, the Ninth Circuit held that the petitioner was prejudiced by his counsel's admittedly deficient performance in failing to investigate the petitioner's uncorroborated and unconvincing denial regarding his presence at the scene of an alleged rape. *Id.* at 838-40. *Johnson* is easily distinguished from the present case because in *Johnson*, the prosecution's case against the petitioner was weak. *Id.* at 839 ("Because of the precariousness of the prosecution's case, there is a 'reasonable probability' that, if [defendant] had not taken the stand and lied, the outcome of the trial would have been different.").

[11] Indeed, the jury instructions as given did not inform the jurors that the evidence of non-forcible sexual acts was relevant to show Petitioner's propensity to commit the forcible offenses. It is difficult to see how Petitioner was prejudiced by this omission.

the non-forcible counts, Petitioner is entitled to be resentenced.

## IV. CERTIFICATE OF APPEALABILITY

28 U.S.C. § 2253(c)(2) provides that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." To satisfy this standard, petitioner must show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 120 S.Ct. 1595, 1603-04 (2000) (internal quotation marks and citation omitted). Because the Court recognizes that reasonable jurists could differ (and have differed) regarding the resolution of the issues presented, the Court issues a certificate of appealability regarding this matter. Specifically, the Court certifies for appeal the issue of whether the scope of *Strickland*-type prejudice suffered by Petitioner extends beyond his convictions on the non-forcible counts. Relatedly, the issue certified for appeal raises the question of whether the remedy granted Petitioner herein, namely, resentencing, is a sufficient remedy or whether Petitioner must be retried on the timely counts.

The parties are directed to Federal Rule of Appellate Procedure 4(a), which sets forth time limitations for the filing of an appeal, and to Federal Rule of Appellate Procedure Federal Rule of Appellate Procedure 22(b)(1)-(2), which relates to Certificates of Appealability.

## V. CONCLUSION

As set forth herein, the record reveals that Petitioner was convicted on the timely, forcible counts based on the strength of Jane Doe's testimony regarding the use of force, which the jury accepted over testimony to the contrary from Petitioner and his wife. Petitioner did not suffer prejudice as a result of the joinder of the non-forcible counts because the court would have been unlikely to exclude evidence

regarding the non-forcible sexual activity from a trial on only the forcible counts. Moreover, the jury was properly instructed to consider each count separately, and no prejudice resulted from the lack of a limiting instruction regarding propensity evidence. As a result, Petitioner cannot show additional prejudice beyond the conviction for the additional counts, and a new trial is not required to neutralize the taint of the constitutional violation. Therefore, the Court rejects those parts of the Final R&R that find that Petitioner should be retried. Instead, the Court holds that Petitioner should be resentenced.

ACCORDINGLY, IT IS ORDERED that (1) the Final Report and Recommendation of the Magistrate Judge is ACCEPTED IN PART AND REJECTED IN PART; and (2) Judgment shall be entered granting a conditional writ of habeas corpus as follows: Unless petitioner is resentenced within one hundred twenty (120) days of the date of the Judgment (plus any additional delay authorized under state law), Respondent shall discharge petitioner from all adverse consequences of his conviction in Riverside County Superior Court, Case No. RIF 096321.

**IT IS SO ORDERED.**

Dated: September 27, 2018

_____
Hon. Josephine L. Staton
United States District Judge